IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGELINA CRAWFORD,<br>**Plaintiff,**<br><br>v.<br><br>CITY OF PHILADELPHIA<br>(DEPARTMENT OF PRISONS) and<br>XAVIER BEAUFORT,<br>**Defendants.** | CIVIL ACTION<br><br><br><br>NO.  24-2993 |

<u>MEMORANDUM</u>

HODGE, J.                                                                                                      March 28, 2025

## I.     INTRODUCTION

Plaintiff Angelina Crawford, a Sergeant at the Philadelphia Department of Prisons, has filed suit against the Department of Prisons and Deputy Commissioner Xavier Beaufort (collectively "Defendants"), alleging claims of sex discrimination, sexual harassment and hostile work environment, retaliation under Title VII of the Civil Rights Act, and First Amendment retaliation under § 1983. (*See generally* ECF No. 1.)

Defendants have filed a Motion to Dismiss all of Plaintiff's claims. For the reasons that follow, Defendants' Motion is granted in its entirety.

## II.    FACTUAL BACKGROUND

Taking the allegations in the Complaint as true, the relevant facts are as follows. On or about July 23, 2001 Plaintiff Angelina Crawford was hired as a correctional officer ("CO") by Defendant City of Philadelphia Department of Prisons ("DOP"). (ECF No. 1 ¶ 12.)[1] In 2009, Plaintiff was promoted to Sergeant. (*Id.*) Plaintiff maintains that she "was and remains qualified for the job functions she was hired to perform. Her performance history is excellent." (*Id.*)

---

[1]     The Court adopts the pagination supplied by the CM/ECF docketing system.

Defendant Xavier Beaufort is the Deputy Commissioner of the Department of Prisons. (*Id.* ¶ 3.) At the relevant time periods, Plaintiff was assigned to Riverside Correctional Facility ("RCF"), one of the prisons at the Philadelphia prison complex on State Road (the "Prisons Complex"). (*Id.* ¶ 13.)

As a matter of city policy, a correctional officer's sex is irrelevant to the job duties one performs—a CO of any sex may guard incarcerated persons of any sex. (ECF No. 1 ¶ 14.) The exception to this policy is that when prisoners arrive at the Prisons Complex, they are searched by a guard of the same sex as the incarcerated person. (*Id.*) At RCF, intakes of female prisoners are performed by an all-female crew of officers (*Id.* ¶ 17.) Intakes of male prisoners are performed by an all-male officer crew at CFCF, another jail in the Prisons Complex. (*Id.*) In September 2018, DOP enacted a policy addressing management of transgender incarcerated persons—Policy 3.E.7. (*Id.* ¶ 15, citing ECF No. 1 at 21.) This policy was in effect on the date giving rise to this action. (*Id.* ¶ 15.) Among its provisions, Policy 3.E.7. provides that,

> If, during the intake process, an inmate who has not identified as transgender on the "Intake Screening Questionnaire by Correctional Officer" claims that commitment gender information is incorrect, the Intake Supervisor will be notified. The inmate will be referred to the medical and behavioral health services providers for consultation.

(ECF No. 1 ¶ 15.)

On June 20, 2022, an incarcerated person arrived at RCF who identified as female (hereinafter "the I/P"). (*Id.* ¶ 16.) Plaintiff was the intake supervisor when the I/P arrived. (*Id.*) Prior to the I/P's arrival, Officer Laneika Edens received a call from the records room that a transgender I/P was arriving at RCF. (*Id.* ¶ 18.) Plaintiff was responsible for relaying this information to Captain Manuel Burnett. (*Id.*) During the intake, Plaintiff and other crew members logged the I/P's belongings, but "could not perform the rest of the intake," because the I/P protested being searched

2

by female guards. (*Id.* ¶ 19.) Captain Burnett interviewed the I/P, and the I/P told Burnett that she[2] had a penis and wished to be searched by a male guard. (*Id.* ¶ 20.)

Plaintiff alleges that medical and behavioral health services refused to and failed to intervene. (*Id.* ¶ 21.) The I/P's intake was then "escalated to Defendant [Deputy Commissioner] Beaufort." (*Id.* ¶ 22.) Plaintiff alleges that Beaufort knew that Plaintiff was the intake supervisor on duty, and that he was aware of "Crawford I."[3] According to Plaintiff, Beaufort ordered her to strip search the I/P. (*Id.* ¶ 25.) Captain Burnett told Plaintiff that Beaufort instructed that the unit treat the I/P as a routine strip search. (*Id.*) Burnett allegedly told Plaintiff to use force if the I/P refused to comply. (*Id.* ¶ 26.) Plaintiff then asked that Lt. Danielle Johnson, the immediate supervisor between Plaintiff and Burnett, participate in the search, but Johnson refused and Burnett agreed that Johnson need not participate. (*Id.* ¶ 27.) Burnett also offered to have another CO, Officer Steven Mitchell, accompany Plaintiff. (*Id.* ¶ 28.) While it is unclear from the briefing, it seems Mitchell did not accompany Crawford or participate in the search. (*Id.*)

Plaintiff performed the strip search, as ordered, and "over [her] protestations." (*Id* ¶ 29.) The search revealed that, as the I/P had stated, she had a penis. (*Id.*) The I/P was uncooperative during the search, continuing to protest being searched by female guards. (*Id.* ¶ 30.) At some point during the search, the guards pepper sprayed the I/P. (*Id.*)

Plaintiff alleges that the order to perform the strip search constitutes an adverse employment action. (ECF No. 1 ¶ 34.) Plaintiff claims that as a result of being forced to perform the strip search, she felt embarrassment, humiliation, and disgrace, and suffered "emotional

---

[2]   The Court understands the I/P in this case to be a transgender woman. (*See* ECF No. 6 at 3.) Therefore, the Court will use she/her pronouns when referring to the I/P.
[3]   From subsequent filings, the Court has gleaned that *Crawford I* refers to another case brought by this Plaintiff against the City of Philadelphia. *See Crawford v. Phila. Dept. of Prisons*, Phila. C.C.P. September Term 2020 No: 000602. However, the Complaint contains no information about the substance of *Crawford I*.

distress, anxiety, frustration, anger, sleeplessness, racing thoughts, and other psychological harm." (*Id.* ¶¶ 32-33.) Plaintiff also claims injuries including lost wages, lost back pay, lost future wages, embarrassment and humiliation, and severe emotional distress. (*Id.* ¶ 35.)

### III.   LEGAL STANDARD

In order to survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a complaint must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citation omitted). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

Applying the principles of *Iqbal* and *Twombly*, the Third Circuit articulated a three-part analysis to determine whether a complaint will survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010). This "inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011)).

The pleading standard does not require a plaintiff to establish the elements of a *prima facie* case, but they must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (internal citations omitted). However, "conclusory or 'bare-bones' allegations will [not]

survive a motion to dismiss." *Id*. at 210. "To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." *Id*.

IV.   **DISCUSSION**

A.   **Plaintiff's Sex Discrimination and Sexual Harassment Claims Fail Because Plaintiff has not Alleged an Adverse Employment Action or a Tangible Employment Action.**

Defendants argue that Counts I and II should be dismissed because Plaintiff did not suffer an adverse employment action or a tangible employment action. (ECF No. 6 at 6.) Plaintiff alleges that her being made to perform the strip search on the I/P constitutes an adverse employment action, and that she "was subjected to harassment and sexual harassment with a tangible employment action." (ECF No. 1 ¶¶ 40, 45.) Defendants assert that Plaintiff has not plead facts to support the existence of an adverse employment action or a tangible employment action.

An adverse employment action is an element of a sex discrimination claim, and a tangible employment action is an element of a sexual harassment claim. *See Friel v. Mnuchin*, 474 F. Supp. 3d 673, 685 (E.D. Pa. 2020), *aff'd,* No. 20-2714, 2021 WL 6124314 (3d Cir. Dec. 28, 2021); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). "An 'adverse employment action' under Title VII's anti-discrimination provision is 'an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Friel*, 474 F. Supp at 686 (citing *Jones v. SEPTA*, 796 F.3d 323, 326 (3d. Cir. 2015)). Courts have considered actions beyond this statutory definition to qualify as adverse employment actions, including "firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (citing *Remp v. Alcon Labs., Inc*., 701 F. App'x 103, 106–07 (3d Cir. 2017) (internal citations omitted)).

A tangible employment action is similarly defined. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Burlington Indus., Inc.*, 524 U.S. at 761. In most cases, "[a] tangible employment action . . . inflicts direct economic harm." *Id.* at 762. Non-economic consequences such as a bruised ego, a demotion without change in pay or benefits, or reassignment to a less convenient job are insufficient to be considered tangible employment actions. *Id.* at 761 (internal citations omitted).

Defendants argue that Plaintiff's claims that she was "ordered," and "compelled" to perform the strip search despite her protests do not rise to the level of adverse or tangible employment action. (ECF No. 6 at 6.) Plaintiff does not allege any monetary loss or change in job position or duties. (*Id.*) Plaintiff responds that she has adequately pled "a Sex Discrimination/Hostile Work Environment Claim," as well as a sexual harassment claim. (ECF No. 7 at 4-5.)

Despite Plaintiff's statement that she adequately pled her sex discrimination claim, her response to the motion to dismiss appears to conflate her sex discrimination and sexual harassment claims, and she does not address Defendants' argument that she fails to plead an adverse employment action, as required to prove a sex discrimination claim. (*See* ECF No. 7 at 4.) The Court agrees with Defendants that Plaintiff has not alleged any facts that could suggest an adverse employment action. Plaintiff alleges that she suffered emotional distress and "humiliation," but does not assert that she lost her job, was demoted, or that her role substantively changed. (ECF No. 1 ¶¶ 32-35.) Plaintiff does claim damages for lost wages and back pay, but provides no explanation for these damages given that there was no change to her employment status. Therefore,

the Court finds that Plaintiff has failed to plead the necessary elements for a sex discrimination claim, and the Motion to Dismiss Count I is granted.

With respect to Plaintiff's sexual harassment/hostile work environment claim, the complaint as pled similarly lacks facts that demonstrate a tangible employment action occurred. However, Plaintiff states that 1) she has pled the elements of a sexual harassment/hostile work environment claim, and 2) the Supreme Court has held that a Plaintiff may plead a sexual harassment claim without showing a tangible employment action. (ECF No. 7 at 4-5.)

To claim sexual harassment because of a hostile work environment, a plaintiff must prove "(1) the employee[] suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990). Plaintiff states conclusively that the first element is met because "Beaufort's order was deliberate and intentional, made after lengthy discussion by the chain of command and over Plaintiff's protestations." (ECF No. 6 at 4, citing ECF No. 1 ¶¶ 20-29.) However, the Court is not satisfied that the conduct alleged in the complaint is in fact discriminatory.

When evaluating this first element, the Third Circuit stated that "[t]he intent to discriminate on the basis of sex in cases involving sexual propositions, innuendo, pornographic materials, or sexual derogatory language is implicit, and thus should be recognized as a matter of course. A more fact intensive analysis will be necessary where the actions are not sexual by their very nature." *Andrews*, 895 F.2d at 1482, n.3. Crawford was required to perform a normal job duty in the ordinary course of her role at a guard. The facts as stated in the complaint fail to indicate to the

7

Court that this was in any way sexual or that Beaufort's requiring her to conduct the strip search of the I/P constitutes discrimination on the basis of sex.

Because Plaintiff has failed to show a tangible employment action or intentional discrimination, her sexual harassment/hostile work environment claim fails. The Motion to Dismiss Count II is granted.

### B.    Plaintiff's Title VII Retaliation Claim Fails for Multiple Reasons.

Plaintiff alleges a Retaliation claim under Title VII, PHRA, and PFPO, asserting that she engaged in protected activity by previously having filed a separate case against the City of Philadelphia in *Crawford I*, and by complaining about the harassment, discrimination, and retaliation alleged in *Crawford I*, and that she suffered an adverse employment action as a result. (ECF No. 1 ¶¶ 53-56.) As an initial matter, because the Court has already concluded that Plaintiff has not pled an adverse employment action, she cannot satisfy the elements of a retaliation claim. *See Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006), as amended (Sept. 13, 2006) ("To establish a prima facie case of retaliation under Title VII, a plaintiff must tender evidence that: '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'") (citation omitted).

Defendants also argue that Plaintiff failed to exhaust her administrative remedies for her retaliation claim. (ECF No. 6 at 7.) Defendants point to Plaintiff's Philadelphia Commission on Human Relations (PCHR) complaint, which does not mention *Crawford I* or "even allude to the fact that she considered the order to strip search the I/P retaliation." (*Id.*) By failing to mention her retaliation claim, Defendants argue that Plaintiff has not satisfied the exhaustion requirements necessary before alleging a claim in federal court. (*Id.*)

8

In support of its argument, Defendants cite to *Antol v. Perry*, in which the Third Circuit held that the plaintiff failed to exhaust administrative remedies for his gender discrimination claim. 82 F.3d 1291, 1296 (3d Cir. 1996). Plaintiff here responds that *Antol* is not on point because in *Antol* "plaintiff filed a disability discrimination claim . . . . an entirely different statute [from gender discrimination] and no EEOC charge or investigation could reasonably be expected to elucidate issues on sex/gender." (ECF No. 7 at 5, citing *Antol*, 82 F.3d 1291 (3d Cir. 1996).) Plaintiff also argues that not every theory of liability needs to be expressed in order "to avoid exhaustion of remedies." (*Id.* at 6.)

The Plaintiff's arguments fail to persuade the Court. The Plaintiff in *Antol did* assert a gender discrimination claim, but even if he hadn't, the court's reasoning in that case would still apply. *See Antol*, 82 F.3d at 1293-95. The court in *Antol* cites to *Waiters*, in which the Third Circuit held that "[t]he relevant test in determining whether appellant was required to exhaust her administrative remedies, therefore, is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." 82 F.3d at 1295 (citing *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)). In *Waiters*, the court held "that the plaintiff's suit was not barred for failure to exhaust administrative remedies because the core grievances in the suit filed and the earlier EEOC complaint were the same—retaliation." *Antol*, 82 F.3d at 1295. However, in this case, Plaintiff's PCHR complaint failed to even mention that "core grievance," that is, the retaliation; the events that allegedly led to the retaliation (*Crawford I*); or the event that was the alleged result of the retaliation—the strip search.

Because Plaintiff failed to include the theory of liability on which her complaint relies in her administrative complaint, she has failed to exhaust her administrative remedies for her Title

9

VII retaliation claim. For this reason as well as the lack of an adverse employment action, her Title VII retaliation claim fails. Defendants' Motion to Dismiss the Title VII retaliation claim is granted.

### C. Plaintiff's Section 1983 Claim is Dismissed Because She Has Not Sufficiently Pled Her Claim

Count IV of Plaintiff's Complaint alleges a retaliation claim under § 1983 for engaging in protected First Amendment activity. (ECF No. 1 ¶ 61.) Plaintiff alleges that her filing of *Crawford I* and complaining about the conduct that led to *Crawford I* was protected First Amendment activity, and Defendants' conduct in this case was committed by persons with formal supervisory authority acting under color of state law. (*Id.* ¶¶ 61-65.) Plaintiff claims that her First Amendment protected conduct was a motivating, or in the alternative, determinative factor in Defendant's decision (presumably, to require Plaintiff to conduct the strip search). (*Id.* ¶ 66.)

To state a First Amendment retaliation claim, a plaintiff must allege (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). The first factor is a question of law; the second factor is a question of fact. *Id.* (citing *Curinga v. City of Clairton*, 357 F.3d 305, 310 (3d Cir. 2004)). A public employee's statement is protected activity when "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

Defendant argues that Plaintiff had not adequately pled facts to support either prong of the First Amendment retaliation claim. (ECF No. 6 at 8.) Plaintiff responds that "the existence of *Crawford I* is pled in the instant complaint [and] . . . is a matter of public record." (ECF No. 7 at 6.) Plaintiff also argues that the fact that Beaufort knew of *Crawford I* when he ordered Plaintiff

to perform the strip search is evidence that *Crawford I* was a substantial factor in the retaliatory action. (*Id.*)

The Court agrees with Defendants that Plaintiff's pleadings fall short. The *existence* of *Crawford I* is undisputed, however, in order for Plaintiff's retaliation claim to survive, she must plead facts sufficient for the Court to draw a rational inference that her statement was in fact protected speech. *See Garcetti*, 547 U.S. at 418. Plaintiff has alleged no facts beyond her filing that case. The Court also agrees with Defendants that Plaintiff's claim that her "First Amendment protected conduct was a motivating [or determinative] factor in Defendant's decision to take adverse actions against Plaintiff," is merely a threadbare recitation of the necessary elements, with no plausible facts. *See Iqbal*, 556 U.S. at 678. Defendants' Motion to Dismiss Plaintiff's § 1983 claim is granted.

V.   **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is granted in its entirety. As this is her first complaint, if the Plaintiff believes that the deficiencies in her complaint can be cured, she may file an amended complaint within 14 days of the date of this order. An appropriate order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**
_____
      **HODGE, KELLEY B., J.**
