IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGELINA CRAWFORD, <br> **Plaintiff,** <br><br> v. <br><br> **CITY OF PHILADELPHIA (DEPARTMENT OF PRISONS) and XAVIER BEAUFORT,** <br> **Defendants.** | CIVIL ACTION <br><br><br><br> NO. 24-2993 |

<u>**MEMORANDUM**</u>

**HODGE, J.**                                                                                                   December 23, 2025

      Plaintiff Angelina Crawford ("Crawford"), a Sergeant at the Philadelphia Department of Prisons, filed an Amended Complaint against the City of Philadelphia Department of Prisons ("DOP") and Deputy Commissioner Xavier Beaufort in his official capacity ("Beaufort") (collectively, "Defendants"), alleging claims of sexual harassment in violation of Title VII, the Pennsylvania Human Relations Act, Pa. Stat. Ann. Tit. 43, § 951 *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Philadelphia Code, Ch. 9-1100 ("PFPO") (Count I); and Section 1983 retaliation for asserting her First Amendment rights (Count II). (ECF No. 10.) Defendants have moved to dismiss both counts of the Amended Complaint. (ECF No. 18.) For the reasons that follow, Defendants' Motion is granted in part and denied in part.

**I.     BACKGROUND**

    **A.     Factual Background**[1]

      Taking the allegations in the Amended Complaint as true, the relevant facts are as follows. Crawford was hired as a correctional officer for DOP in 2001 and was promoted to Sergeant in

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

2009. (ECF No. 10 ¶ 12.) In September of 2020, Crawford filed *Crawford v. Phila (Dept. of Prisons)*, No.: 000602, September Term 2020 (Phila. C.C.P. Sept. 15, 2020) ("*Crawford I*"). (*Id.* ¶ 13.) In *Crawford I*, Crawford alleged that after complaining about being sexually harassed by a Medical and Behavioral Health worker at Curran Fromhold Correctional Facility ("CFCF"), the worker demanded she be removed from the Medical and Behavioral Health area, and as a result, Crawford was transferred to the Riverside Correctional Facility ("RCF"). (*Id.* ¶ 14.) Beaufort was deposed in connection with *Crawford I*. (*Id.* ¶ 17.) His testimony included his personal knowledge of Crawford and other members of Crawford's family at the time of the facts underlying *Crawford I*. (*Id.* ¶ 18.) Beaufort was questioned about a policy which provided that employees shall not be employed in a position placing them under direct or indirect supervision by an immediate family member, spouse, or cohabitant without authorization from the Commissioner of Prisons. (*Id.* ¶ 19; ECF No. 19-3 at 7.[2]) Beaufort testified that he did not know of anyone fitting the description in the policy off the top of his head. (ECF. No. 19-3 at 7.) At the time of his testimony, Beaufort's wife worked under Beaufort. (ECF No. 10 ¶ 20.)

---

[2] At the 12(b)(6) stage, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Generally, undisputedly authentic documents underlying a complainant's claims are considered when attached by the defendant to a motion to dismiss. *See Pension Ben. Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A court can consider such documents without converting the motion into one for summary judgment because plaintiff is already on notice of such document and need not be afforded the opportunity to respond. *Id.* Crawford attaches Beaufort's deposition transcript from *Crawford I* and the *Crawford I* complaint to her opposition brief. The Amended Complaint refers specifically to these documents, and thus, her claims are based on the documents. Defendants did not object to the authenticity of the documents. The Court therefore can consider these documents.

2

The City of Philadelphia and Crawford settled *Crawford I*. (*Id.* ¶ 21.) That settlement expressly provided that it did not bar Crawford "from pursuing any further claim relating to that certain event that occurred on or about June 20, 2022." (*Id.* ¶ 6.)

On June 20, 2022, an incarcerated person who identified as female ("the I/P") was brought to RCF. (*Id.* ¶ 24.) Crawford was the Intake Supervisor when the I/P presented to RCF. (*Id.*) Female intakes are performed at RCF by an all-female crew of officers, while male intakes are performed at CFCF, within the same Prisons Complex, by an all-male crew. (*Id.* ¶ 25.) Prior to the I/P's arrival, Officer Laneika Edens received a call from the records room stating that a transgender incarcerated person was arriving, and Crawford relayed this information to Captain Manuel Burnett ("Burnett"), one of her supervisors. (*Id.* ¶¶ 26; 35.) The I/P remained in receiving at RCF for hours, contrary to policies and procedures. (*Id.* ¶ 26) Crawford and other crew members logged the I/P's belongings, but "could not perform the rest of the intake" because the I/P protested to being searched by female guards. (*Id.* ¶ 27.) Burnette interviewed the I/P, who said she[3] wished to be searched by a male and that she had a penis. (*Id.* ¶ 28.)

Medical and behavioral health services refused to and failed to intervene, contrary to the applicable policy. (*Id.* ¶ 29.) The I/P's incomplete intake was then "escalated to Defendant Beaufort." (*Id.* ¶ 30.) Beaufort knew that Crawford was the intake supervisor on duty, and he was aware of *Crawford I* and his own testimony in that case. (*Id.* ¶¶ 31–32.)

Beaufort ordered Crawford to strip search the I/P. (*Id.* at ¶ 33.) Burnett told Crawford that Beaufort instructed Crawford's unit to treat the I/P as a routine strip search, and Burnett instructed her to use force if the I/P refused to comply. (*Id.* ¶¶ 33–34.) Plaintiff asked that Lt. Danielle

---

[3] The Court understands the I/P in this case to be a transgender woman. (*See* ECF No. 18 at 3.) Therefore, the Court will use she/her pronouns when referring to the I/P.

Johnson ("Johnson"), the intermediate supervisor between Crawford and Burnett, participate. (*Id.* at ¶ 36.) Johnson refused and Burnett agreed that Johnson should not participate. (*Id.*) Burnett offered to have Officer Steven Mitchell ("Mitchell") accompany them. (*Id.* at ¶ 37.) Crawford was ordered to search the I/P, and Mitchell was not. (*Id.*) Over her objection, Crawford performed the strip search on the I/P, which confirmed that she had a penis. (*Id.*) The I/P continued to contest being searched by women and had to be pepper sprayed while she was protesting and crying over the search. (*Id.* ¶ 39.) The experience was horrifying to Crawford, who asserts that as a direct and proximate result of this incident, she suffered emotional distress, anxiety, frustration, anger, sleeplessness, racing thoughts, and other psychological harm. (*Id.*)

As a matter of City policy, a correctional officer's sex is irrelevant to their job duties. (*Id.* ¶ 22.) There is one exception to this policy: When incarcerated persons are received at the Prisons Complex, male incarcerated persons are searched by male guards and female incarcerated persons are searched by female guards. (*Id.*) An additional policy specific to transgender incarcerated persons provides:

> If, during the intake process, an inmate who has not identified as transgender on the "Intake Screening Questionnaire by Correctional Officer" claims that commitment gender information is incorrect, the Intake Supervisor will be notified. The inmate will be referred to the medical and behavioral health services providers for consultation.

(*Id.* ¶ 23.)

### B.  Procedural History

In her original Complaint, Crawford alleged claims of sex discrimination, sexual harassment and hostile work environment, retaliation under Title VII of the Civil Rights Act, and First Amendment retaliation under § 1983. (ECF No. 1.) The Court dismissed all of her claims without prejudice. (ECF No. 8.) Crawford amended her complaint to include additional factual allegations and revise the claims previously brought.

## II.  LEGAL STANDARD

In order to survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a complaint must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. at 678 (citation omitted). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Applying the principles of *Iqbal* and *Twombly*, the Third Circuit has articulated a three-part analysis to determine whether a complaint will survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). This three-prong inquiry involves the following: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

The pleading standard does not require a plaintiff to establish the elements of a prima facie case, but they must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (internal citations omitted). "[C]onclusory or 'bare-bones' allegations will [not] survive a motion to dismiss." *Id*. at 210. "To prevent dismissal, all civil complaints must [] set out 'sufficient factual matter' to show that the claim is facially plausible." *Id*.

### III. DISCUSSION

#### A. Sexual Harassment

Sexual harassment is a category of discrimination prohibited by Title VII, PHRA, and PFPO, and can arise in the form of either quid pro quo harassment or hostile work environment. *See Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 682 (E.D. Pa. 2016). In making a claim for hostile work environment sexual harassment, a plaintiff must show that "(1) the employee suffered intentional discrimination because of [her] sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of *respondeat superior* liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (internal quotations omitted). Crawford's Title VII, the PHRA, and the PFPO sexual harassment claims are analyzed under the same standard. *See Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 213 (3d Cir. 2015); *Mammen v. Thomas Jefferson Univ.*, 523 F. Supp. 3d 702, 713 (E.D. Pa. 2021).

Defendants argue that the circumstances surrounding the decision to order Crawford to perform the strip search do not support her allegations of sexual harassment because "the existence of a penis on the body of a person being strip searched does not make the strip search 'sexually offensive.'" (ECF No. 18 at 9.) Additionally, Defendants argue that Crawford's additional allegations do not support departure from the Court's Opinion on the first Motion to Dismiss that she does not allege discrimination on the basis of sex because she was required to perform a normal job duty in the course of her role. Defendants therefore only challenge the first prong of the sexual harassment claim. In opposition, Crawford asserts that the order to conduct the strip search was in violation of policy, and that being ordered to inspect male genitalia is sexual in nature and "***worse***

than 'sexual propositions, innuendo, pornographic materials, or sexual derogatory language. . . .'" (ECF No. 19 at 6 (internal citation omitted).)

To establish intentional discrimination, a plaintiff must show that "gender [was] a substantial factor in the discrimination." *Andrews v. City of Phila.*, 895 F.2d 1469, 1485 (3d Cir. 1990). While sexual advances, innuendo, or contact are common forms of intentional discrimination on the basis of sex, overt sexual conduct is not necessary to establish a sexually hostile work environment. *Id.* "Intimidation and hostility toward women because they are women can obviously result from conduct other than explicit sexual advances." *Id.* (quoting *Hall v. Gus Contr. Co.*, 842 F.2d 1010, 1014 (8th Cir. 1988)).

While the specifics of the strip search are not alleged, strip searches often require a visual inspection of the person's naked body, but no touching or intrusion of the person's body. *See Gwiazdowski v. Cnty. of Chester*, 263 F.R.D. 178, 185 (E.D. Pa. 2009); *N.G. v. Connecticut*, 382 F.3d 225, 228 n.4 (2d Cir. 2004); *Allison v. GEO Grp., Inc.*, 611 F. Supp. 2d 433, 453 n.12 (E.D. Pa. 2009) (collecting cases regarding variety in scope of strip searches). There is no allegation that Crawford was forced to touch the I/P in conducting the strip search. Being ordered to conduct a purely visual examination of an individual who may have male genitalia is not as "explicitly sexual" as "sexual propositions, innuendo, pornographic materials, or sexual derogatory language." *See Andrews*, 895 F.2d at 1482 n.3. A strip search requires visual inspection—viewing is not merely incidental to the task, it *is* the task—and Crawford could not look away. Yet that requirement does not automatically make the inspection sexual in nature—medical professionals, for instance, may be required to visually inspect genitalia of the opposite sex.

But unlike the hypothetical of a medical professional, the allegations in the Amended Complaint state that this strip search was not part of Crawford's ordinary job duties. Specifically,

7

she alleges that searching an incarcerated person who is expected to have male genitalia is not a normal job duty in the ordinary course of a female correctional officer's role (ECF No. 10 ¶ 40), and, moreover, that strip searching a transgender incarcerated person who "protested the search by women, is not a normal job duty in the ordinary course of [Crawford's] role as a correctional sergeant." (*Id.* ¶ 55.) While the identified DOP transgender policy does not specifically address strip searching, Crawford has alleged the existence of policies and procedures related to strip searching. These allegations support that it was not in her normal course of business to conduct a strip search of a transgender woman who protests to being searched by female correctional officers because she has male genitalia.

A reasonable jury could conclude that Beaufort's order intentionally discriminated against Crawford because of her sex, and therefore the order created a sexually harassing workplace environment. The strip search order deviated from a sex-specific policy which provides for incarcerated persons suspected of having male genitalia not to be strip searched by female correctional officers. Were Crawford male, there would not have been a deviation from policy. Even if the strip search was not sexual in nature, "[a] more fact intensive analysis" is necessary, *Andrews*, 895 F.2d at 1482, n.3, and as such, dismissal of the claim at this stage would be premature.

### B.    Retaliation Under Section 1983 for Engaging in Protected First Amendment Activity

Crawford alleges that Beaufort's order for her to strip search the I/P was retaliation to her First Amendment activity in bringing *Crawford I*.[4] "Retaliation for the exercise of constitutionally

---

[4] Crawford's brief asserts that her Title VII retaliation claim is duplicative of this claim. (ECF No. 20 at 5.) However, the Amended Complaint does not support that assertion. Moreover, the Court previously dismissed Crawford's Title VII retaliation claim for failing to allege an adverse employment action and failing to exhaust her administrative remedies. (ECF No. 8 at 9–10.)

protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." *White v. Napoleon*, 897 F.2d 103, 111–12 (3d Cir. 2009). To state a First Amendment retaliation claim, a plaintiff must allege "(1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *Fenico v. City of Phila.*, 70 F.4th 151, 162 (3d Cir. 2023) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006)). Speech is protected if the public employee spoke as a private citizen, and the statement involved a matter of public concern. *Id.*

Defendants assert that Crawford's claim is not adequately pled to establish that *Crawford I* was a "substantial factor" in Beaufort's order to conduct the strip search.[5] A decisionmaker "must be aware of the protected conduct" for that conduct to be a substantial factor in the decision. *Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir. 2002). Defendants point to the lack of temporal proximity: *Crawford I* was filed on September 15, 2020, Beaufort's deposition occurred on October 13, 2021, and the allegedly retaliatory order was on June 20, 2022. Crawford challenges this timeline by raising that *Crawford I* was not closed until after the strip search, and even so, lack of temporal proximity is not dispositive.

---

Crawford has presented no allegations to support either an adverse employment action or that she has exhausted her administrative remedies. She therefore has not raised an actionable Title VII retaliation claim.

[5] While Defendants' argument is framed in terms of causation, causation is not a factor in a First Amendment retaliation claim brought by a public employee. The Third Circuit applies a three-factor test for First Amendment retaliation claims brought by private citizens, one of which is to establish a causal connection between the protected activity and the retaliatory action. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). But the Third Circuit has confirmed that the *Hill* test is applicable in cases like this that are brought by public employees. *Falco v. Zimmer*, 767 F. App'x 288, 298–99 (3d Cir. 2019). Crawford therefore is not required to establish a causal connection. However, applying the correct factors does not make Defendants' argument irrelevant as it goes directly to whether the protected activity was a substantial factor in the allegedly retaliatory conduct. *See Kazar v. Slippery Rock Univ. of Pa.*, 679 F. App'x 156, 161 (3d Cir. 2017).

9

Crawford makes no allegations that would permit a reasonably jury to find that *Crawford I* was a substantial factor in Beaufort's order. The eight-month gap between Beaufort's deposition and the strip search order does not rise to the level of unusually suggestive temporal proximity to establish the protected activity was a "substantial factor." *See Kazar v. Slippery Rock Univ. of Pa.*, 679 F. App'x 156, 161 (3d Cir. 2017). Without unusually suggestive temporal proximity, courts look to other types of circumstantial evidence that give rise to the inference that the protected conduct was a substantial factor, "such as actual antagonistic conduct or animus against the employee." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007). There are no allegations to provide circumstantial evidence that could give rise to an inference that *Crawford I* was a substantial factor. Crawford's conclusory allegations that her First Amendment activity was a motivating factor in Beaufort's decision to order Crawford to conduct the strip search cannot be taken as true under the 12(b)(6) standard. Beaufort's mere awareness of his deposition testimony does not make Crawford's petition a "substantial factor" in ordering Crawford to strip search the I/P.

Furthermore, in order for Crawford's petition in *Crawford I* to be protected First Amendment activity, it must relate to a matter of public concern. *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 382–83 (2011). Crawford alleges that it is protected because she petitioned the government for a redress of grievances (ECF No. 10 ¶ 61),[6] but she makes no allegation that *Crawford I* involves a matter of public concern. A petition complaining of a change in an employee's own duties is not a matter of public concern. *Guarnieri*, 564 U.S. at 399.

---

[6] While Crawford alleges that there is an actionable retaliation claim in this Court even if her speech was not protected by the First Amendment (ECF No. 10 ¶ 63), she does not assert how such a claim would be actionable. As stated in n.4 *supra*, Crawford does not have an actionable Title VII retaliation claim.

*Crawford I* involves Crawford's transfer to a different facility following her complaints of sexual harassment by another worker who sought to have her transferred. (ECF No. 10 ¶ 14.) Crawford challenged the transfer as an adverse employment action because her job functions materially changed and she was no longer eligible for overtime pay. (ECF No. 19-2 at 5.) The petition presents a common employment discrimination claim, not a matter of public concern. She therefore has not satisfied either element to state a claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court denies Defendant's Motion to Dismiss as to Count I, and grants Defendant's Motion to Dismiss as to Count II. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**